# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| YANGAROO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIGITAL MEDIA SERVICES, INC., et al., | ) | |
| DUPLICATION SERVICES, INC., PELCO | ) | |
| PRINTS, INC., DUPLICATION | ) | |
| HOLDINGS CORPORATION, | ) | C.A. No. N23C-06-090 EMD CCLD |
| DUPLICATION SERVICES, LLC, | ) | |
| CENTERFIELD CAPITAL PARTNERS, | ) | |
| L.P., CENTERFIELD CAPITAL | ) | |
| PARTNERS II, L.P., CENTERFIELD | ) | |
| CAPITAL PARTNERS III, L.P., SR | ) | |
| CAPITAL ADVISORS, LLC, and BDO | ) | |
| USA, LLP, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 4, 2024
Decided: May 30, 2024

*Upon Defendants Centerfield Capital Partners, L.P., Centerfield Capital Partners II, L.P., and Centerfield Capital Partners III, L.P.'s Motion to Dismiss*
**GRANTED in part, DENIED in part**

*Upon Defendant BDO USA, LLP's Motion to Dismiss*
**GRANTED in part, DENIED in part**

*Upon Defendant SR Capital Advisors, LLC's Motion to Dismiss*
**GRANTED**

David J. Soldo, Esquire, Morris James LLP, Wilmington, Delaware, Anne Mercado Clark, Esquire, Jeffrey D. Coren, Esquire, Phillips Lytle LLP, Buffalo, New York. *Attorneys for Plaintiff Yangaroo Inc.*

Catherine A. Gaul, Esquire, Randall J. Teti, Esquire, Ashby & Geddes, Wilmington, Delaware, George A. Gasper, Esquire, Ice Miller LLP, Indianapolis, Indiana. *Attorneys for Defendants Centerfield Capital Partners, L.P., Centerfield Capital Partners II, L.P., Centerfield Capital Partners III, L.P.*

Ethan H. Townsend, Esquire, Daniel T. Menken, Esquire, McDermott Will & Emery LLP, Wilmington, Delaware. *Attorneys for Defendant BDO USA, LLP.*

David A. Felice, Esquire, Bailey & Glasser, LLP, Wilmington Delaware. *Attorneys for Defendant SR Capital Advisors, LLC*.

**DAVIS, J.**

## I.     INTRODUCTION

This is a contractual fraud action assigned to the Complex Commercial Litigation Division of this Court. Plaintiff Yangaroo Inc. ("Yangaroo"), the buyer, alleges that certain representations in the asset purchase agreement (the "APA") were knowingly false when made. Yangaroo further alleges that several of the sellers' affiliates participated in that fraud. Yangaroo additionally claims that the sellers breached post-closing obligations under the asset purchase agreement.

Before the Court are three motions to dismiss filed by the sellers' affiliates (the "Moving Defendants"). The motions collectively seek dismissal of all of the claims not brought against the sellers. Those claims are for aiding and abetting fraud (Count IV), tortious interference with contract (Count V), and unjust enrichment (Count VI).

For the reasons stated below, the Court **GRANTS** the Moving Defendants' motions as to Count V (tortious interference) in its entirety, Count VI (unjust enrichment) against BDO USA, LLP, all the claims against Centerfield Capital Partners, L.P., and all the claims against SR Capital Advisors, LLC. The Court **DENIES** the motions in all other respects.

## II.     RELEVANT FACTS

### A. THE PARTIES

Yangaroo is a Canadian corporation that operates in digital media distribution.[1] Yangaroo was the buyer under the APA.[2]

---

[1]  D.I. No. 1, Complaint (hereinafter "Compl.") ¶¶ 1, 19.
[2]  *Id.* ¶ 21.

Defendants Digital Media Services, Inc. ("Digital"), Duplication Services, Inc. ("DM-DS"), and Pelco Prints Inc. ("Pelco" and, together with Digital and DM-DS, "DMS") are New York corporations headquartered in that state.[3] Through the APA, Yangaroo purchased substantially all of DMS's assets.[4]

Defendant Duplication Holdings Corporation ("Holdings") is an Indiana corporation headquartered in that state, and it owns all of the outstanding stock of DMS.[5]

Defendant Duplication Services, LLC ("Duplication Services" and, together with DMS and Holdings, the "Duplication Entities") is a Delaware entity headquartered in Indiana, and it owns all of the outstanding stock of Holdings.[6] Duplication Services' members are a group of entities, including several of the other defendants in this case.[7]

Defendants Centerfield Capital Partners, L.P. ("Centerfield I"), Centerfield Capital Partners II, L.P. ("Centerfield II"), and Centerfield Capital Partners III, L.P. ("Centerfield III and, together with Centerfield I and Centerfield II, the "Centerfield Entities") are three Delaware entities headquartered in Indiana.[8] Yangaroo alleges that Centerfield II and Centerfield III are members of Duplication Services.[9]

SR Capital Advisors, LLC ("SR Capital") is a New York entity headquartered in that state.[10] Yangaroo alleges that SR Capital is a member of Duplication Services.[11]

---

[3] *Id.* ¶¶ 2-4.
[4] *Id.* ¶ 21.
[5] *Id.* ¶ 5.
[6] *Id.* ¶ 6.
[7] *Id.*
[8] *Id.* ¶¶ 7, 8, 9.
[9] *Id.* ¶ 6.
[10] *Id.* ¶ 10.
[11] *Id.* ¶ 6.

BDO USA, LLP ("BDO" and, together with SR Capital and the Centerfield Entities, the "Moving Defendants") is a Delaware entity headquartered in New York.[12] Yangaroo contends that BDO is the Duplication Entities' accountant in connection with the APA.[13]

## B. THE APA

The Duplication Entities and Yangaroo entered the APA on May 19, 2021.[14] Under the APA, DMS sold substantially all of its assets to Yangaroo, including substantially all of DMS's customer accounts and agreements.[15] The APA designated DMS as "Sellers," Yangaroo as "Buyer," Holdings as "Midco," and Duplication Services as "Parent."[16]

APA Article IV contains the Duplication Entities' express representations and warranties.[17] Two of those representations are involved here: APA Section 4.16's "Customers and Suppliers" representation and APA Section 4.21's "Contracts" representation.[18] APA Section 4.16 provides in pertinent part:

> Schedule 4.16 of the Disclosure Schedule lists those top ten (10) consolidated customers of Sellers ("Customers") to which Sellers have made sales in either of the two (2) most recent fiscal years or the two (2) month period ended February 28, 2021 . . . . Except as listed on Schedule 4.16 of the Disclosure Schedule, Sellers have not had any material dispute with any Customer or Supplier within the last two (2) years and no Customer or Supplier has given [the Duplication Entities] any written notice terminating, canceling, reducing the volume under, or renegotiating the pricing terms or any other material terms of any applicable Contract with any Seller or threatening in writing to take any of such actions, and, to Sellers' Knowledge, no customer or supplier intends to do so.[19]

APA Section 4.21(a) provides in pertinent part:

> Schedule 4.21(a) of the Disclosure Schedule lists the following Contracts to which any Seller is a party or by which it is bound (organized by each Contract that meets

---

[12] *Id.* ¶ 11.
[13] *Id.* ¶ 101.
[14] *Id.* ¶ 21; Compl., Ex. A (hereinafter "APA").
[15] Compl. ¶ 21.
[16] *Id.* ¶ 22.
[17] APA § 4.
[18] Compl. ¶¶ 23-30.
[19] APA § 4.16 (emphases omitted).

any of clauses (i) through (xxii) below) (each Contract set forth, or required to be set forth, on Schedule 4.21(a) of the Disclosure Schedule, a "Material Contract"):

> (i) any Contract (or group of related Contracts) involving the performance of services or the delivery of goods or materials by or to Sellers, the performance of which will involve aggregate consideration in excess of Twenty Thousand Dollars ($20,000);
> . . . .
> (ix) any Contract under which the consequences of a default or termination could have a Material Adverse Effect; [and]
> . . . .
> (xxi) all other Contracts that are material to the Purchased Assets or the operation of the Business and not previously disclosed pursuant to this Section 4.21;[20]

APA Section 4.21(b) provides in pertinent part:

> Sellers have delivered to Buyer a correct and complete copy of each written Material Contract listed in Schedule 4.21(a) of the Disclosure Schedule as amended to date and a written summary setting forth the terms and conditions of each oral Material Contract referred to in Schedule 4.21(a) of the Disclosure Schedule. With respect to each such Material Contract: (i) the Material Contract is legal, valid, binding, enforceable, and in full force and effect; [and] (ii) the Material Contract is assignable to Buyer without any Consent of any Person except as set forth in Schedules 4.5, 4.6 and 4.21 of the Disclosure Schedule; . . . .[21]

APA Section 3.5 obliged the Duplication Entities to "use their commercially reasonable efforts to obtain the consent of the other party to any Assumed Contract to the sale, transfer, sublease or assignment thereof to Buyer in all cases in which such consent is required (subject and in addition to any other condition or covenant set out in [the APA])."[22] APA Section 3.5 required the Duplication Entities to "use their commercially reasonable efforts to cooperate with Buyer in reasonable arrangements designed to provide for Buyer the benefits of such Assumed Contract...." if such counter party's consent was not obtained.[23]

APA Section 6.5 provides for exclusive remedies, saying in pertinent part:

---

[20] *Id.* § 4.21(a) (emphases omitted).
[21] *Id.* § 4.21(b) (emphases omitted).
[22] *Id.* § 3.5.
[23] *Id.*

After the Closing, the foregoing indemnification provisions shall be the sole and exclusive remedy for monetary damages for the matters set forth in this Agreement, or any of the transactions contemplated hereby, and no party hereto shall have any cause of action or remedy at law or in equity for breach of contract, rescission, tort or otherwise against any other party arising under or in connection with this Agreement, except for claims for intentional breach or fraud, . . . in each of which case each of the parties shall have and retain all other rights and remedies existing in their favor at law or in equity, including any actions for specific performance or injunctive or other equitable relief.

## C. THE ALLEGED FRAUD

Yangaroo contends that the representations in APA Sections 4.16 and 4.21 were false when made and that the Duplication Entities breached their obligations under APA Section 3.5.[24] Yangaroo's allegations stem from the October 2021 termination of a Material Contract—the "Verizon Agreement."[25]

Verizon Sourcing LLC ("Verizon") had been one of DMS's top customers.[26] Pelco and Verizon entered into the Verizon Agreement in November 2012.[27] In February 2021, Verizon reached out to DMS regarding a "vendor review," and Verizon issued a "request for proposal" ("RFP").[28] The RFP provided notice that Verizon was reevaluating its "ad distribution partners" and wanted a pitch from DMS.[29] Yangaroo maintains that the RFP indicated that DMS's years-long relationship with Verizon was in jeopardy.[30] Indeed, Verizon ultimately terminated the Verizon Agreement in October 2021.[31]

Yangaroo alleges that the Duplication Entities, along with the Moving Defendants, hid the at-risk Verizon Agreement from Yangaroo.[32] Yangaroo claims the Duplication Entities

---

[24] Compl. ¶¶ 76-85.
[25] *See id.* ¶ 72.
[26] *Id.* ¶ 48.
[27] *Id.* ¶ 49.
[28] *Id.* ¶ 55.
[29] *Id.*
[30] *Id.* ¶ 57.
[31] *Id.* ¶ 72.
[32] *Id.* ¶¶ 61-62.

never even disclosed the Verizon Agreement's existence, let alone that contract's anti-assignment clause or the shadow cast upon it by the RFP.[33] Yangaroo further asserts that even after the APA closed, the Duplication Entities continued to hide the RFP from Yangaroo.[34]

The Complaint mostly targets the Duplication Entities; however, Yangaroo's claims also implicate the Moving Defendants. In particular, Yangaroo alleges the Moving Defendants were integral to the due diligence process and directed or encouraged the Duplication Entities' concealment of the Verizon issues.[35] For example, the Complaint states:

> Upon information and belief, Centerfield [Entities], SR Capital, and BDO coordinated with [the Duplication Entities] and/or provided [the Duplication Entities] with advice related to disclosures required under the APA, and were involved in [the Duplication Entities'] decision to conceal information concerning Verizon and the Verizon Agreement from Yangaroo both during the APA due diligence period and after the execution of the APA.[36]

### D. THIS LITIGATION

Yangaroo filed its Complaint on June 21, 2023, after unsuccessfully pursuing relief in federal court.[37] The Centerfield Entities, SR Capital, and BDO each separately moved to dismiss the Complaint.[38] Yangaroo opposed each motion.[39] The Centerfield Entities, BDO, and SR Capital each replied to Yangaroo's opposition.[40] The Court heard argument on the motions on March 4, 2024.[41]

---

[33] *Id.* ¶ 62

[34] *Id.* ¶¶ 70-71.

[35] *Id.* ¶¶ 63-70.

[36] *Id.* ¶ 65.

[37] Compl.

[38] D.I. No. 19, The Centerfield Entities Motion to Dismiss (hereinafter "Centerfield's Mot."); D.I. No. 20, BDO's Motion to Dismiss (hereinafter "BDO's Mot."); D.I. No. 24, SR Capital's Motion to Dismiss (hereinafter "SR Capital's Mot.").

[39] D.I. No. 29, Yangaroo's Opposition to the Centerfield Entities' Motion to Dismiss (hereinafter "Pl.'s Opp'n to Centerfield"); D.I. No. 30, Yangaroo's Opposition to BDO's Motion to Dismiss (hereinafter "Pl.'s Opp'n to BDO"); D.I. No. 39, Yangaroo's Opposition to SR Capital's Motion to Dismiss (hereinafter "Pl.'s Opp'n to SR Capital").

[40] D.I. No. 33, The Centerfield Entities' Reply in Support of their Motion to Dismiss (hereinafter "Centerfield's Reply"); D.I. No. 34, BDO's Reply in Support of its Motion to Dismiss (hereinafter "BDO's Reply"); D.I. No. 40, SR Capital's Reply in Support of its Motion to Dismiss (hereinafter "SR Capital's Reply").

[41] D.I. No. 44.

Aside from Duplication Services joining a stipulated order regarding scheduling in July 2023,[42] the Duplication Entities have not responded to Yangaroo's Complaint.

## III. PARTIES' CONTENTIONS

### A. CENTERFIELD ENTITIES' MOTION

#### 1. *Motion*

The Centerfield Entities challenge the Complaint on several bases. First, the Centerfield Entities rely on the APA's exclusive remedies provision, claiming that clause forbids Yangaroo's current claims.[43] The Centerfield Entities also argue that the aiding and abetting fraud claim must be dismissed because there was no underlying fraud to abet and, in any event, the Centerfield Entities never owed Yangaroo a duty to disclose.[44] The Centerfield Entities maintain that the tortious interference claim fails because: (i) Yangaroo is improperly trying to bind the Centerfield Entities to their subsidiary's contract; (ii) the Centerfield Entities could not have tortiously interfered with their affiliate's contract, and (iii) the alleged interference occurred before the APA existed.[45] The Centerfield Entities assert that the unjust enrichment claim cannot stand because the at-issue conduct is exclusively governed by the APA.[46] Separately, the Centerfield Entities argue that Centerfield I cannot be liable under any theory because it dissolved years before the APA was entered.[47]

#### 2. *Opposition*

Yangaroo offers three reasons as to why its claims are not barred by the APA's exclusive remedies provision: (i) the Centerfield Entities cannot avail themselves of the APA's protection

---

[42] D.I. No. 10.
[43] Centerfield's Mot. at 7-8.
[44] *Id.* at 12-14.
[45] *Id.* at 9-11.
[46] *Id.* at 15.
[47] *Id.* at 6-7.

while disclaiming its obligations; (ii) the exclusive remedies provision does not apply to claims against non-parties to the APA; and (iii) claims based on intentional breach and fraud are carved out of the exclusive remedies provision.[48] Yangaroo contends that its pleading of the underlying fraud is sufficient to support an aiding and abetting fraud claim and that a duty to disclose is not an element of this tort.[49] Yangaroo continues that not all of the alleged tortious interference occurred pre-closing and that a breaching party's affiliate can be liable for tortious interference despite the affiliation.[50] Next, Yangaroo claims the unjust enrichment claim is viable because the APA was procured by fraud so the APA does not necessarily govern.[51] Last, Yangaroo contends that there are outstanding factual issues pertaining to whether Centerfield I was still winding up at the relevant times, and thus potentially involved in the alleged misconduct, which precludes dismissal.[52]

## B. BDO'S MOTION

### 1. Motion

BDO, too, seeks dismissal of all the claims against it. BDO claims it could not have aided and abetted the Duplication Entities' alleged fraud, in part, because there was no such fraud, and because neither BDO nor its predecessor—which was the relevant entity for much of the due diligence process—knew about or substantially assisted fraud.[53] As for tortious interference, BDO claims there are no allegations that BDO engaged in any improper, interfering conduct after the APA was signed.[54] BDO makes arguments similar to those made by the

---

[48] Pl.'s Opp'n to Centerfield at 12-15.
[49] *Id.* at 15-21.
[50] *Id.* at 21-24.
[51] *Id.* at 24-25.
[52] *Id.* at 26-27.
[53] BDO's Mot. at 7-10.
[54] *Id.* at 10-12.

Centerfield Entities as to the unjust enrichment claim—*i.e.*, the APA exclusively governs—but adds that BDO received no enrichment at Yangaroo's expense.[55]

### 2. *Opposition*

Yangaroo disagrees with each of BDO's arguments. First, Yangaroo claims that it has adequately pled underlying fraud and BDO's knowing assistance of that fraud.[56] Yangaroo also argues that, for present purposes, any successor liability issues pertaining to BDO are premature factual disputes that rely on facts outside the Complaint.[57] With regard to tortious interference, Yangaroo maintains that it alleged that BDO improperly interfered with DMS's performance, which it says is all that is required at this stage.[58] Yangaroo concludes by saying that BDO's fee was an unjust enrichment and that the APA does not exclusively govern because it was procured by fraud.[59]

### C. SR CAPITAL'S MOTION

### 1. *Motion*

SR Capital's motion is the narrowest, with the caveat that it incorporates the other Moving Defendants' arguments by reference.[60] SR Capital contests this Court's personal jurisdiction.[61] SR Capital argues that the APA's forum selection provision is the only plausible basis for jurisdiction over it.[62] SR Capital continues that because it did not sign the APA, it is

---

[55] *Id.* at 13-14.
[56] Pl's Opp'n to BDO at 4-8.
[57] *Id.* at 9-10.
[58] *Id.* at 12-13.
[59] *Id.* at 11-12.
[60] SR Capital's Mot. at 11.
[61] *Id.* at 5-10.
[62] *Id.* at 6.

10

not bound to the forum selection provision.[63] SR Capital adds that it was not "closely related" to the APA and that this case does not arise from SR Capital's standing with regard to the APA.[64]

### 2. Opposition

Yangaroo asserts that SR Capital is closely related to the APA because SR Capital directly benefitted from it and could have foreseen being bound to it, either of which is supposedly sufficient to make SR Capital closely related.[65] Yangaroo concludes that because SR Capital is closely related to the APA and Yangaroo's claims against SR Capital emanate from the APA, the APA's forum selection provision enables Yangaroo to pursue its claims against SR Capital in Delaware.[66]

## IV. STANDARD OF REVIEW

### A. FAILURE TO STATE A CLAIM

When reviewing a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[67] The Court will not, however, accept "conclusory allegations that lack specific supporting factual allegations."[68]

---

[63] *Id.* at 6-7.
[64] *Id.* at 7-10.
[65] Pl.'s Opp'n to SR Capital at 5-10.
[66] *Id.* at 10-11.
[67] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).
[68] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

11

## B. LACK OF PERSONAL JURISDICTION

Upon a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing this Court's jurisdiction over the defendant.[69] A *prima facie* showing of personal jurisdiction suffices at the pleading stage.[70] The plaintiff's well-pled allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor; but, unlike a motion under Rule 12(b)(6), the Court may look outside the pleadings, and the complaint's factual allegations can be contradicted by affidavit.[71]

## V. DISCUSSION

### A. DEFENDANT-SPECIFIC ARGUMENTS

The Court begins its analysis with the reasons the claims against Centerfield I and SR Capital must be dismissed. As such, the Court will not address any other issues unique to Centerfield I or SR Capital with respect to other portions of this opinion.

### 1. *Centerfield I's Cannot be Liable.*

Centerfield I's position is uncomplex. It filed its Certificate of Cancellation with the Delaware Secretary of State on June 11, 2019.[72] That filing caused Centerfield I's existence as a juridical entity to end.[73] As the Court of Chancery has explained:

> After a certificate of cancellation has been filed, a defunct entity may speak only through a receiver to manage litigation or any other outstanding business: the receiver is appointed because there are no other fiduciaries to make decisions for the entity. A defunct entity cannot otherwise make any decisions or take any action.[74]

---

[69] *ADGS, LLC v. Emery Silfurtun, Inc.*, 2022 WL 1498433, at *3 (Del. Super. May 11, 2022) (citing *Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1164 (Del. Super. 2016)).

[70] *Id.*

[71] *Id.* (citations omitted).

[72] *See* Centerfield's Mot., Ex. 1. "The court may take judicial notice of filings with the Delaware Secretary of State." *Swift v. Hous. Wire & Cable Co.*, 2021 WL 5763903, at *2 n.14 (Del. Ch. Dec. 3, 2021).

[73] *See In re Reinz Wis. Gasket, LLC*, 2023 WL 3300042, at *2 (Del. Ch. May 8, 2023).

[74] *Id.* (footnote omitted).

Thus, the question is whether Yangaroo has raised a reasonable inference that an entity that became defunct in 2019 is liable for misconduct committed in 2021.

Despite the deference given to the plaintiff on Rule 12(b)(6) motion, "the court need not 'accept every strained interpretation of the allegations proposed by the plaintiff.'"[75] Here, the Complaint's only factual allegations against Centerfield I come in the form of group pleading against each of the Centerfield Entities.[76] Unlike Centerfield I, however, Centerfield II and Centerfield III were still operating during the relevant time period. The Court will not undertake a reading of the Complaint which infers that a defunct entity shares the blame for allegations that are coextensively levied against active entities. Because the Complaint sets forth no specific facts from which the Court can reasonably infer Centerfield I took part in the alleged misconduct, the Complaint fails as to Centerfield I.

### 2. *The Court Lacks Personal Jurisdiction over SR Capital.*

SR Capital is also entitled to dismissal. SR Capital is a New York entity with its principal place of business in New York.[77] Accordingly, Yangaroo must demonstrate a basis for specific jurisdiction over SR Capital.[78] To do so, Yangaroo points only to the APA's forum selection provision.[79] A forum selection clause can establish a party's consent to the selected forum's jurisdiction.[80] But more analysis is required when a litigant seeks to enforce a forum selection clause against an entity that did not sign the relevant agreement.

---

[75] *Barnes v. Hooper*, 2024 WL 165987, at *2 (Del. Super. Jan. 12, 2024) (quoting *Murray v. Mason*, 244 A.3d 187, 192 (Del. Super. Dec. 16, 2020)).

[76] *See* Compl. ¶ 9 n.2.

[77] *Id.* ¶ 10.

[78] *See Owens v. Lead Stories, LLC*, 2021 WL 3076686, at *7 (Del. Super. July 20, 2021).

[79] Pl.'s Opp'n to SR Capital at 4-10.

[80] *See Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *25 (Del. Ch. Jan. 26, 2024) (quoting *Partners & Simons, Inc. v. Sandbox Acqs.*, 2021 WL 3161651, at *3 (Del. Ch. July 26, 2021)).

A litigant must satisfy the *Capital Group*[81] test to enforce a forum selection clause against a non-signatory.[82] The three elements of that test are:

> (i) the agreement contains a valid forum selection provision; (ii) the non-signatory has a sufficiently close relationship to the agreement, either as an intended third-party beneficiary under the agreement or under principles of estoppel; and (iii) the claim potentially subject to the forum selection provision arises from the non-signatory's standing relating to the agreement.[83]

Here, the Court focuses its analysis on the second element and SR Capital.

Yangaroo acknowledges that the APA has a clause disclaiming third-party beneficiaries.[84] As such, Yangaroo must demonstrate that the principles of estoppel apply to SR Capital. Two circumstances suffice to establish estoppel in this context: "(i) the non-signatory accepted a direct benefit from the agreement or (ii) the non-signatory had a close relationship to the agreement, a signatory to the agreement controlled the non-signatory, and the circumstances establish that the signatory agreed to the forum selection provision on behalf of its controlled affiliate."[85] Yangaroo must establish one of those circumstances to bind SR Capital to the APA's forum selection clause.

The Complaint makes no allegations that SR Capital was controlled by a signatory to the APA. So, Yangaroo must show SR Capital directly benefitted from the APA. A qualifying benefit can be pecuniary or non-pecuniary, but it must be direct and actually received.[86] As for the direct benefit SR Capital supposedly received, Yangaroo contends:

[81] *Cap. Grp. Cos., Inc. v. Armour*, 2004 WL 2521295 (Del. Ch. Oct. 29, 2004).
[82] *See Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1089-90 (Del. Ch. 2021).
[83] *Id.* at 1090 (citing *Cap. Grp.*, 2004 WL 2521295, at *5).
[84] Pl.'s Opp'n to SR Capital at 6 (citing APA § 8.3).
[85] *Fla. Chem.*, 262 A.3d at 1090. The second circumstance has been referred to as the "foreseeability" prong. *See Sustainability Partners LLC v. Jacobs*, 2020 WL 3119034, at *7 (Del. Ch. June 11, 2020). The foreseeability prong can also apply where a non-signatory defendant seeks to enforce the forum selection clause against a signatory plaintiff. *Id.* (citations omitted).
[86] *See Fla. Chem.*, 262 A.3d at 1091 (citing *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019)).

SR Capital directly benefitted from the APA because it received a portion of the $3.16 million purchase price paid by Yangaroo to DMS pursuant to the APA. Whether SR Capital received its share of the APA proceeds in a distribution from Duplication Services is of no moment, because any receipt of this benefit resulted from the APA.[87]

Yangaroo's argument is mistaken. A "benefit result[ing] from the APA" is not enough—it must result *directly* from the APA.[88] The Court recently addressed whether distributions of sale proceeds to the seller's members are direct benefits of the sale.[89] In *Chumash*, the Court held that such distributions are not direct benefits.[90] The distributions are not direct benefits because the distributions are contingent upon the selling entity's managers choosing to distribute the proceeds and, in that way, are removed from the contract.[91] Were it otherwise, passive members who receive contract-based distributions could end up unwittingly consenting to personal jurisdiction without taking any affirmative act to do so.[92]

The Court will follow the holding in *Chumash*. The distributions SR Capital purportedly received—which are not mentioned in the Complaint and would have needed to be distributed twice before reaching SR Capital—are even further from a direct benefit than the pre-planned distributions at issue in *Chumash*.[93] That means Yangaroo's only plausible basis for establishing jurisdiction over SR Capital is insufficient. Accordingly, the Court grants SR Capital's motion.

---

[87] Pl.'s Opp'n to SR Capital at 7 (citations omitted).

[88] *Fla. Chem.*, 262 A.3d at 1091 (citing *Neurvana Med.*, 2019 WL 4464268, at *4).

[89] *See Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *8-9 (Del. Super. Apr. 10, 2024).

[90] *Id.*

[91] *Id.* at *8 (citing *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2020 WL 3564622, at *13 n.100 (Del. Ch. June 29, 2020)).

[92] *Id.* at *9 (noting the due process concerns associated with personal jurisdiction (citing *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 127 n.2 (Del. 2016)).

[93] *See id.* at *8 (explaining the purchase-related distributions were approved as part of the approval of the purchase itself).

15

**B. THE APA'S EXCLUSIVE REMEDY PROVISION DOES NOT COMMAND DISMISSAL.**

The Centerfield Entities[94] maintain that Yangaroo's claims are preempted by the exclusive remedy provision in APA Section 6.5. There are at least two problems with the Centerfield Entities' reliance on Section 6.5. First, the Court is unclear on how the Centerfield Entities have standing to enforce provisions of the APA. Second, the Court finds that the scope of the exclusive remedy provision is ambiguous. That makes a pleading-stage dismissal inappropriate.

The Court is guided by the result in *LVI Group Investments, LLC v. NCM Group Holdings, LLC*.[95] There, the Court of Chancery declined to dismiss claims based on an exclusive remedy provision because "it is unclear whether [certain defendants], as non-parties to the [contract], have standing to enforce its provisions" and "even if [those defendants] could enforce the exclusive remedies clause, there is another ambiguity that requires further factual development."[96]

As for the standing issue, Yangaroo invokes the general rule that a party cannot "have it both ways" by seeking protection under the terms of a contract while simultaneously disclaiming the contract's obligations.[97] The Centerfield Entities respond that third-party beneficiaries—which are facially precluded by APA Section 8.3—can enforce contracts.[98] The Centerfield Entities add that releases can be drafted to apply to non-signatories.[99] The Court will not address

---

[94] The Court will continue to refer to "the Centerfield Entities" for the remainder of this opinion, even though the claims against Centerfield I are dismissed regardless of the other arguments.

[95] 2018 WL 1559936 (Del. Ch. Mar. 28, 2018).

[96] *Id.* at *14.

[97] Pl.'s Opp'n to Centerfield at 12 (quoting *Kuroda v. SPJS Hldgs., L.L.C.*, 2010 WL 4880659, at *4 (Del. Ch. Nov. 30, 2010)); *see also Wash. House Condo Assoc. of Unit Owners v. Daystar Sills, Inc.*, 2015 WL 6750046, at *4 (Del. Super. Oct. 28, 2015) ("As a general rule, parties who are strangers to the contract have no legal right to enforce it." (citing *RHA Constr., Inc. v. Scott Eng'g Inc.*, 2011 WL 3908765, at *5 (Del. Super. Sept. 1, 2011))).

[98] Centerfield's Reply at 4.

[99] *Id.*

16

those arguments because, as in *LVI Group*,[100] even if the Centerfield Entities could enforce APA Section 6.5, ambiguity precludes dismissal.

The ambiguity in APA Section 6.5 is whether it provides the exclusive remedy for APA-related claims against anyone, or only those against other parties to the APA. The key language is "*no party hereto* shall have any cause of action . . . against *any other party* arising under or in connection with this Agreement."[101] According to the Centerfield Entities, "any other party" cannot be limited to parties to the APA because the drafters omitted "hereto" from that phrase.[102] Put differently, if "any other party" meant "any other party to the APA," the "hereto" in the first part of the sentence would be superfluous. The Court attempts to avoid finding that contractual language is superfluous verbiage,[103] but the analysis is less simple in this instance.

Despite the contrary presumption, the APA's drafter used "hereto" unnecessarily in places. That is because "Parties"—note the capital "P"—is defined in the APA to mean "Buyer, Parent, Midco, and Sellers," and "Party" is defined as any one of those entities.[104] And yet, another clause within APA Section 6.5 states, "no legal action . . . may be maintained by any *Party hereto*."[105] Because "Party" is defined to mean one of the parties to the APA, the "hereto" in that clause appears to be superfluous. Moreover, APA Section 6.5 uses "Party" without "hereto" in some places,[106] which militates against finding that the drafters would include "hereto" any time they meant a "Party" to the APA.

---

[100] This question was ultimately left unanswered in *LVI Group* because the claim it pertained to failed on other grounds. *See LVI Grp. Invs., LLC v. NCM Grp. Hldgs.*, 2019 WL 7369198, at *32 (Del. Ch. Dec. 31, 2019).

[101] APA § 6.5 (emphasis added).

[102] Centerfield's Reply at 5.

[103] *See NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court." (citing *Majkowski v. Am. Imaging Mgmt. Serv.*, 913 A.2d 572, 588 (Del. Ch. 2006))).

[104] APA at 1.

[105] *Id.* § 6.5.

[106] *Id.* (specifically, "other Parties" and "each Party").

The Court need not settle this interpretive question at this juncture.  Instead, it is enough to conclude that a reasonable interpretation of the contract would permit Yangaroo's claims.[107]  Here, it is reasonable to read the at-issue portion of APA Section 6.5 consistently with the latter portions of APA Section 6.5 that are expressly limited to claims between parties to the APA.  Therefore, the APA's exclusive remedy provision does not provide a basis to dismiss Yangaroo's claims.[108]

### C. COUNT IV (AIDING AND ABETTING FRAUD) IS WELL-PLED.

There are three elements to an aiding and abetting claim: (1) an underlying tort; (2) the alleged abettor's knowledge of that tort; and (3) the alleged abettor's substantial assistance of the tort.[109]  The Moving Defendants make arguments as to each of those elements.

#### 1. Underlying Fraud

On the first element, the Moving Defendants essentially come to the Duplication Entities' defense and say Yangaroo's fraud claim is not well-pled.  The Moving Defendants say that Yangaroo's fraud allegations are not particularized enough to satisfy Rule 9(b), and that the fraud claim is an impermissibly bootstrapped duplication of the breach of contract claim.  Neither contention justifies dismissal.

Rule 9(b) requires the following circumstance of fraud to be pled with particularity: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representation."[110]  This requirement is "relatively easy" to satisfy when the fraud is "based on a

---

[107] *See LVI Grp.*, 2018 WL 1559936, at *14.
[108] This conclusion obviates the need to address which, if any, of Yangaroo's claims fall under Section 6.5's carve-out for fraud and intentional breach.
[109] *AmeriMark Interactive, LLC v. AmeriMark Hldgs., LLC*, 2022 WL 16642020, at *11 (Del. Super. Nov. 3, 2022).
[110] *ABRY Partners, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

representation in a contract."[111]  Here, APA Sections 4.16 and 4.21 provide the contents of the false representation, and those representations were made at the time and place of the APA's execution.[112]  The Duplication Entities made those representations for the alleged purpose of inducing Yangaroo to enter the APA.[113]  That is enough particularity to satisfy Rule 9(b).

Another requirement for pleading fraud is that "[a] contracting party may not bootstrap a breach of contract claim into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform."[114]  Relatedly, "[u]nder Delaware's pleading standard, a plaintiff's fraud claim may not simply rehash the damages allegedly caused by the breach of contract."[115]  But, "[t]he anti-bootstrapping rule does not apply where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, or where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim."[116]

Yangaroo has adequately pled that the Duplication Entities knew the representations in Section 4.16 and 4.21 were false at the time they were made.[117]  At this stage, the Court finds these allegations are sufficient to avoid application of the anti-bootstrapping rule.[118]  Likewise, the fact that Yangaroo requests the same minimum amount of damages for each of its six causes

[111]  *Swipe Acq. Corp. v. Krauss*, 2020 WL 5015863, at *9 (Del. Ch. Aug. 25, 2020) (quoting *Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015)).

[112]  *See* Compl. ¶¶ 77, 79, 81, 94-95.

[113]  *Id.* ¶¶ 95-96.

[114]  *Swipe Acq.*, 2020 WL 5015863, at *11 (internal quotation marks omitted) (quoting *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *5 (Del. Ch. Dec. 21, 1998)).

[115]  *AmeriMark*, 2022 WL 16642020, at *11 (internal quotation marks omitted) (quoting *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *6 (Del. Super. June 27, 2016)).

[116]  *Swipe Acq.*, 2020 WL 5015863, at *11.  The Court notes that the second "or" in this sentence reflects that different damages are not essential where the plaintiff adequately pleads the defendant knew a representation was false at the time of contracting.

[117]  *See* Compl. ¶¶ 52-57.

[118]  *See Trust Robin, Inc. v. Tissue Analytics, Inc.*, 2022 WL 17423728, at *5 (Del. Ch. Dec. 2, 2022) ("Here, the Plaintiff is not merely taking 'the simple fact of nonperformance, add[ing] a dollop of the counterparty's subjective intent not to perform, and claim[ing] fraud.'" (alterations in original) (citation omitted)).

19

of action[119] does not make the fraud claim a "rehash" of the contractual claim.[120] The minimum award listed in each prayer for relief is uncoincidentally the purchase price under the APA.[121] Yangaroo may not recover the same damages multiple times but, at the pleading stage, it need not pick just one theory to pursue when the allegations support several.[122]

### 2. *Knowing Assistance*

The Moving Defendants contend that their conduct fails to show that they knowingly assisted any fraud. To adequately plead the knowledge element, the plaintiff must "plead facts from which it reasonably can be inferred that the defendants knew or were in a position to know of the underlying tortious conduct."[123] For substantial assistance, the plaintiff must show the abettor's "encouragement or assistance [wa]s a substantial factor in causing the resulting tort."[124] Analyzing these elements is "necessarily fact intensive."[125]

The Complaint alleges that the Centerfield Entities and BDO[126] were involved in the due diligence surrounding the APA.[127] They are also alleged to have regularly communicated with

---

[119] *See* Compl. at Prayer for Relief. The Complaint does not fix the exact amount sought, instead saying: "in an amount to be determined at trial, but not less than $3.16 million." *Id.*

[120] In fact, the breach of contract claim includes the alleged nonperformance of a covenant, which is wholly detached from the fraud allegations. *See id.* ¶¶ 82-87.

[121] *Id.* ¶ 47.

[122] *See, e.g.*, *Trust Robin*, 2022 WL 17423728, at *5 ("[T]o the extent the abundance of fraud claims pled is redundant, obviously, the Plaintiff can recover for resulting damages (if any) but once. But at this pleading stage, it would be inappropriate to dismiss for redundancy."); *Principal Growth Strategies, LLC v. AGH Parent LLC*, 2024 WL 274246, at *13 n.12 (Del. Ch. Jan. 25, 2024) ("If plaintiff has pleaded and then prevails in demonstrating that the same conduct results in both liability for breach of defendant's fiduciary duties and disgorgement via unjust enrichment, plaintiff then will have to elect his remedies. But, at this time, defendants have wholly failed to justify dismissal of this count." (cleaned up) (quoting *McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008))).

[123] *AmeriMark*, 2022 WL 16642020, at *11 (citing *Agspring Holdco, LLC v. NGP X US Hldgs., L.P.*, 2020 WL 4355555, at *20 (Del. Ch. July 30, 2020)).

[124] *In re Oracle Corp. Deriv. Litig.*, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020) (quoting Restatement (Second) of Torts § 876 cmt. d (1979)).

[125] *Id.* (quoting *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *42 (Del. Ch. Aug. 27, 2015)).

[126] BDO protests that its predecessor was the entity that advised Yangaroo at the beginning of the due diligence process and that BDO did not become implicated in these events until January 2021. *See* BDO's Mot. at 1. These facts are outside the Complaint and BDO has not set forth a basis for the Court to consider them at this stage. In any event, BDO's late arrival to due diligence does not necessarily preclude all liability for BDO. How this circumstance affects Yangaroo's claims is a question for later proceedings.

[127] Compl. ¶¶ 63-64.

20

representatives from the Duplication Entities regarding the Duplication Entities' disclosure obligations.[128] The Complaint specifically alleges that the Moving Defendants "were involved in [the Duplication Entities'] decision to conceal information concerning Verizon and the Verizon Agreement from Yangaroo both during the APA due diligence period and after the execution of the APA."[129] As an example, the Complaint cites a December 2020 meeting between BDO employees and representatives of the Duplication Entities at which the BDO employees allegedly advised against disclosing information relating to Verizon and the Verizon Agreement.[130] The Complaint adds that the Centerfield Entities encouraged a DMS executive to hide the Verizon Agreement from Yangaroo.[131]

The Court finds that there is a fair inference that the Moving Defendants knowingly assisted the Duplication Entities' purported fraud based on the Moving Defendants' alleged involvement in the due diligence process and their purported advice to the Duplication Entities. The Court finds it is reasonable to infer that as participants in the due diligence process, the Moving Defendants were in a position to know what the Duplication Entities were obligated to disclose. It is likewise reasonable to infer that the Moving Defendants' purported advice to not disclose the Verizon Agreement was a substantial factor in the Duplication Entities' decision to do just that. The Court is not opining on whether Yangaroo's allegations are necessarily compelling or destined to succeed; but all Yangaroo must do at this stage is provide notice of a conceivable claim.[132]

---

[128] *Id.*
[129] *Id.* ¶ 65.
[130] *Id.* ¶ 66.
[131] *Id.* ¶ 70.
[132] *Indep. Realty Tr., Inc. v. USA Carrington Park 20, LLC*, 2022 WL 625293, at *4 (Del. Super. Mar. 1, 2022) ("Delaware is a notice-pleading jurisdiction. In order to pass muster, a complaint need only 'give general notice as to the nature of the claim asserted against the defendant in order to avoid dismissal for failure to state a claim.'" (quoting *Nye v. Univ. of Del.*, 2003 WL 22176412, at *3 (Del. Super. Sept. 17, 2003))).

The Moving Defendants also argue that they cannot be liable for aiding and abetting fraud because they had no duty to disclose the truth. They rely primarily on *Oracle* for that assertion. There, certain defendants were alleged to have abetted fraud by failing to publicly disclose facts that, if known, would have likely prevented the consummation of a fraudulent transaction.[133] In other words, "the alleged substantial aid was silence."[134] But, as the Moving Defendants emphasize, "[a]bsent a fiduciary or contractual relationship, 'Delaware law generally does not impose a duty to speak.'"[135] Thus, in *Oracle*, the Court of Chancery concluded that the plaintiff first had to establish the alleged abettors' duty to speak and then show an intentional breach of that duty substantially assisted the fraud.[136] The Moving Defendants seek to impose that burden on Yangaroo.

The allegations here are not like those in *Oracle*. The Centerfield Entities and BDO are not alleged to have merely silently countenanced the Duplication Entities' fraud. Rather, as explained above, the Centerfield Entities and BDO are alleged to have advised the Duplication Entities to commit the fraudulent acts. Delaware law does not require entities to take on the role of a good Samaritan, but neither does it allow entities to actively promote tortious conduct with impunity. Eventually, Yangaroo will have to prove that BDO and the Centerfield Entities actually encouraged the fraud. Yangaroo will also have to show that that encouragement rose to the level of substantial assistance. In this situation, however, the lack of a duty to disclose is not a legal impediment to aiding and abetting liability.

---

[133] *In re Oracle*, 2020 WL 3410745, at *11.
[134] *Id.* at *12.
[135] *Id.* (quoting *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *15 (Del. Ch. May 16, 2007)).
[136] *Id.* at *12-13.

22

**D. COUNT V (TORTIOUS INTERFERENCE WITH CONTRACT) IS NOT WELL-PLED.**

Yangaroo's tortious interference claim cannot be maintained. Yangaroo's core allegations against the Moving Defendants pertain to actions taken before the APA existed, so they are irrelevant to tortious interference. The lone post-closing allegation does not aver an act that was a factor in causing a breach. Thus, Count V fails.

A tortious interference with contract claim must satisfy five elements: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[137] The scope of this tort is "narrowly circumscribe[d]" in Delaware to avoid deterring legitimate competition.[138]

"A contract cannot be tortiously interfered with until it exists."[139] So conduct during the due diligence process cannot support this claim. Yangaroo does not argue otherwise. That leaves Yangaroo with the one allegation that deals with post-closing conduct—specifically, that the Centerfield Entities and SR Capital encouraged a DMS executive to continue hiding the Verizon-related issues from Yangaroo.[140] Even if true, that was not tortious interference.

For an act to amount to tortious interference, it must be "a significant factor in causing [a] breach."[141] Concealing the Verizon problems only pertains to the alleged breaches of the representations in APA Sections 4.16 and 4.21. Those breaches occurred, if at all, when the APA was executed and the false representations were made.[142] For that reason, post-closing conduct could not have been a factor in causing the breach. As a matter of simple logic, the

---

[137] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021) (quoting *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013)).
[138] *Id.* (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 589(Del. Ch. 1994)).
[139] *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt. L.P.*, 2010 WL 1267126, at *5 (Del. Super. Mar. 31, 2010).
[140] Compl. ¶ 70.
[141] *Surf's Up*, 2021 WL 117036, at *6.
[142] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *9 (Del. Super. Aug. 31, 2021) (noting "a breach of representations occurs at the time of contracting").

cause of an event must predate the event. Therefore, none of Yangaroo's allegations support tortious interference, and Count V must be dismissed.

### E. COUNT VI (UNJUST ENRICHMENT) IS NOT WELL-PLED AS TO BDO BUT WELL-PLED AS TO THE CENTERFIELD ENTITIES.

The Moving Defendants each oppose Yangaroo's unjust enrichment claim. They each argue that the APA comprehensively governs this action, which precludes a quasi-contractual claim. BDO separately argues that it was not enriched by Yangaroo's impoverishment. The Court finds that only the BDO-specific argument is availing.

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[143] To plead unjust enrichment a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, [and] (4) the absence of justification."[144] Generally, if the parties' relationship is "comprehensively governed by contract" an unjust enrichment claim will be dismissed.[145]

#### 1. The Centerfield Entities

The Centerfield Entities argue Yangaroo's unjust enrichment claim must be dismissed because this action is governed by the APA. That is the general rule, but an exception applies here. Delaware courts hold that "[t]he contract itself is not necessarily the measure of [the] plaintiff's right where the claim is premised on an allegation that the contract arose from

---

[143] *CFGI, LLC v. Common C Hldgs. LP*, 2024 WL 325567, at *6 (Del. Super. Ct. Jan. 29, 2024) (internal quotation marks omitted) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

[144] *Id.* (quoting *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 875 (Del. 2020)). The Delaware Supreme Court has clarified that the absence of a remedy at law is not an element of an unjust enrichment claim in Superior Court. *State ex. rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 390-91 (Del. 2023). That traditionally enumerated element is only necessary to obtain the Court of Chancery's equitable jurisdiction. *Id.* at 391 (citing *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 351 (Del. Ch. 2022)). Hence, the Moving Defendants arguments as to that element are anachronous.

[145] *CFGI*, 2024 WL 325567, at *6 (citations omitted).

24

wrongdoing (such as . . . fraud) or mistake and the [defendant] has been unjustly enriched by the benefits flowing from the contract."[146] Put another way, "when a plaintiff alleges that 'it is the [contract], itself, that is the unjust enrichment,' the existence of the contract does not bar the unjust enrichment claim."[147]

That exception was demonstrated in *LVI Group*.[148] There, a defendant allegedly obtained a contract through fraud, but the contract's existence did not preclude an unjust enrichment claim.[149] Instead, the Court of Chancery allowed the unjust enrichment claim to persist because "the Complaint adequately alleges that the [contract] itself arose from Defendants' fraud."[150] Delaware courts have routinely applied that exception.[151] Since it applies here too, Yangaroo's unjust enrichment claim against Centerfield II and III survives dismissal.

### 2. BDO

BDO has a different argument. Specifically, BDO claims that it did not receive any enrichment from the APA itself or from Yangaroo.[152] BDO instead received a $60,000 fee from the Duplication Entities for its advisory services.[153] That circumstance does not support Yangaroo's claim for unjust enrichment.

To maintain an unjust enrichment claim, there must be a relationship between the defendant's enrichment and the plaintiff's impoverishment.[154] A "simple relationship" is enough

[146] *LVI Grp.*, 2018 WL 1559936, at *16 (alterations in original) (citation omitted).
[147] *Id.* (alteration in original) (quoting *McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008)).
[148] *Id.* at *17.
[149] *Id.*
[150] *Id.*
[151] *See, e.g.*, *Andor Pharms., LLC v. Lannett Co., Inc.*, 2024 WL 1855112, at *18-19 (Del. Super. Apr. 15, 2024); *Chumash*, 2024 WL 1554184, at *16; *Urvan v AMMO, Inc.*, 2024 WL 863688, at *14 (Del. Ch. Feb. 27, 2024); *Adviser Invs., LLC v. Powell*, 2023 WL 6383242, at *8 (Del. Ch. Sept. 29, 2023).
[152] BDO's Mot. at 13-14.
[153] *See* APA, Ex. A.
[154] *See CFGI*, 2024 WL 325567, at *6.

where the defendant facilitated prohibited activities, but there still must be a relationship.[155] Merely arguing that an entity should not be allowed to keep money derived from a misbegotten transaction is not enough to establish unjust enrichment.[156]

Here, there is not a relationship between what BDO received and what Yangaroo lost. As a result, even if the Court ordered the disgorgement of BDO's fee, it is unclear where the money would go. Giving it to Yangaroo would amount to a windfall because the money did not come from Yangaroo. And it would make little sense to give the fee back to the Duplication Entities considering they are alleged to be the primary tortfeasors. That conundrum demonstrates the flaw in Yangaroo's position.

Yangaroo relies on *Lyons Insurance Agency, Inc. v. Kirtley*[157] and *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*;[158] however, these cases do not support Yangaroo's argument. In *CLP Toxicology*, the plaintiff "allege[d] all Defendants 'received substantial direct benefits *from the Purchase Agreement*.'"[159] In *Lyons*, the plaintiff was impoverished by having its clients follow a former employee to a new firm, and the defendants were enriched by the new clients' business and their retention of a specified "buy-out fee" that was allegedly owed to the plaintiff.[160] Neither case supports the conclusion that a plaintiff can use unjust enrichment to recover a fee that a third party paid to the defendant. Since there is no connection between BDO's gain and Yangaroo's loss, Count VI is dismissed as to BDO.

---

[155] *See CoreTel Am., Inc. v. Oak Point Partners, LLC*, 2022 WL 2903104, at *11 (Del. Super. July 21, 2022) (citation omitted).
[156] *Id.* at *12.
[157] 2019 WL 1244605 (Del. Super. Mar. 18, 2019).
[158] 2020 WL 3564622 (Del. Ch. June 29, 2020).
[159] *Id.* at *13 (emphasis added).
[160] *Lyons Ins.*, 2019 WL 1244605, at *2-3.

## VI. CONCLUSION

For the reasons stated above, the Centerfield Entities Motion is **GRANTED** as to Count V (tortious interference) and all the claims against Centerfield I but **DENIED** in all other respects; BDO's Motion is **GRANTED** as to Counts V (tortious interference) and VI (unjust enrichment) but **DENIED** in all other respects; and SR Capital's Motion is **GRANTED** in full.

**IT IS SO ORDERED.**

May 30, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     File&ServeXpress

27